1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEREMIAH JOHNSON,

11                  Plaintiff,                No. CIV S-05-2141 LKK GGH P

12           vs.

13   R. SANDHAM, et al.,                      ORDER

14                  Defendants.

15   _____/

16   Introduction

17            Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Plaintiff had been proceeding with a co-plaintiff, Kenneth Capogreco, in an action that

19   was originally filed in September, 2000, until by Order, filed on October 25, 2005, this complaint

20   was severed from that action, Case No. CIV S-00-1951 LKK GGH P (Capogreco v. Parks).

21   Pending before the court are 1) plaintiff's motion to compel, filed on April 23, 2007, to which

22   defendants filed an opposition; 2) defendants' motion for (partial) summary judgment, filed on

23   May 9, 2007,[1] to which plaintiff has filed an opposition.

24   _____

25        [1] Although filed on May 9, 2007, an amended certificate of service indicates that the
     motion was served on plaintiff on May 22, 2007.  Also, even though the motion is entitled as one
     for partial summary judgment, it is possible that this title reflects that this action was proceeding
26   on behalf of two plaintiffs.  The body of the pending motion makes clear that defendants are

                                              1

1  Amended Complaint

2         The court hereby takes judicial notice of its prior rendering of the allegations of

3  the amended complaint, see, e.g., Findings and Recommendations, filed 1/06/03;[2] Findings and

4  Recommendations, filed on 1/28/04,[3] and sets forth the summary of the operative amended

5  complaint as contained therein, respectively, at pages 1-3, excising those allegations that are

6  specific to the former co-plaintiff:

7          This action is proceeding on an amended complaint, filed on
   March 7, 2001; the original complaint was filed on September 8,
8          2000.  The gravamen of plaintiffs' extensive amended complaint is
   that they have been deprived of adequate medical care, including
9          dental and psychiatric care, in violation of their rights under the
   Eighth Amendment....  Plaintiff Johnson, a brittle diabetic, has
10         been told by defendants Sandham and Gilkes that he needed a
   special diet to control blood sugar levels but they have not
11         prescribed any such diet. [Amended Complaint (Am. Cmpl.), pp.
   1-3].  Defendants Sandham and Gilkes have also refused to order
12         blood tests needed by plaintiff Johnson or authorized his access to
   a glucometer.  Id., at pp. 2-3.
13
           Defendant Malan, Health Care Manager at HDSP, as well as a
14         dentist, has not addressed plaintiffs' medical problems properly
   because he is not qualified as a dentist to make the medical
15         evaluations needed by plaintiffs and have jeopardized plaintiffs'
   lives.  Am. Cmpl., pp. 3-4.
16
17         ..........................................................................................

18         Defendant Maurino, dietician at HDSP, refuses to issue special
   diets to mainline diabetics.  Am. Cmpl., p.5.  Defendant Parks,
19         D.D.S., a dentist at HDSP, has failed to provide plaintiffs with the
   routine dental care to keep minor problems from turning into major
20         ones, causing them unnecessary pain and suffering.  Id., at pp. 6 -
   7.
21
           Defendant Castro, the Warden at HDSP, has refused to make the
22         necessary changes to ensure that inmates receive proper medical
   care.  Am. Cmpl., p. 7.  Defendant Tristan, C.D.C. Director, is
23         responsible for insuring that inmates receive proper medical care;

24  seeking summary judgment as to all claims.

25      [2] Adopted by Order filed on March 19, 2003.

26      [3] Adopted by Order filed on September 20, 2004.

his failure to investigate problems and make necessary changes to medical treatment has resulted in unnecessary pain and suffering to plaintiffs. Id., p. 8.

Plaintiffs, inter alia, also allege that HDSP improperly processes 602 inmate appeals containing medical grievances in that prison authorities either refuse to process the appeal at all, or, if the appeal does process beyond the informal level review, the inmate appeals office makes no effort to enforce time constraints for staff response. Am. Cmpl., p. 10. This results in inmates having to wait for a year or more before resolution of the 602 appeal, during which time medical care has been denied. Id., p. 10.

Plaintiffs seek injunctive relief as well as monetary damages. Am. Cmpl., pp. 22-23.

Plaintiffs' injunctive relief claims against the defendants employed at High Desert State Prison, Sandham, Lett, Parks, Castro, Maurino, Gilkes and Malan, that is all but those against C.D.C. (Chief Deputy) Director Tristan, have been dismissed pursuant to an order filed on March 19, 2003, adopting the January 6, 2003 findings and recommendations, as plaintiffs have been transferred from HDSP to Salinas Valley State Prison (SVSP).

Motion to Compel

In order to address plaintiff's motion, it is helpful to re-cap some of the increasingly tortured history of this litigation. By Order, filed on 1/28/04 (docket entry # 136), this court vacated defendants' then pending partial summary judgment motion as to plaintiff Johnson without prejudice to its renewal on the court's own motion "upon a showing that plaintiff has been allowed access to the prison law library and to the relevant legal property, whether in the possession of plaintiff Johnson or plaintiff Capogreco." By Order, filed on 10/13/04 (# 141), defendants' motions for partial summary judgment as to each plaintiff was deemed re-noticed, filed and submitted as of 10/13/04, except defendant Maurino. By Order, filed on 7/5/05 (#145), the court found that all defendants (including Maurino) had moved for partial summary judgment as to each plaintiff, seeking entry of judgment in their favor and dismissal of the entire action, but defendants were given 30 days to show they had provided plaintiff Johnson with access to the relevant legal property, after which plaintiff Johnson was to

3

1   file his opposition to the motion for partial summary judgment as to himself within the following

2   30 days, or to elect to proceed upon the previously submitted opposition.  The court therein

3   stated:

> Even though the court on its own motion re-noticed defendants' motions for partial summary judgment in the October 13, 2004 order, at least in part on the ground that plaintiffs had appeared to waive any further objection with respect to Johnson's access to his legal property and law library access, it appears the issue has not been laid to rest. Indeed, defendants have made no showing that plaintiff Johnson has been provided access to his own relevant legal property, which, as noted, was a fact recognized in the court's October 13, 2004 order renewing and re-submitting defendants' partial summary judgment motions.
>
> This unwieldy litigation has been proceeding at a snail's pace for too long, in large part, because both defendants and plaintiffs continue to drag their heels in complying with the letter of the court's orders. The undersigned has neither the time nor the resources to adjudicate the pending motions, only to have objections raised based on any party's failure to have complied with a prior court order. Nor will the court attempt to cobble together endlessly plaintiffs' opposition/exhibits to the pending motions from various earlier filings, beyond what is set forth herein. Therefore, defendants will be directed to show proof that plaintiff Johnson has been allowed access to the relevant legal property in this matter, as well as law library access, before the court will proceed on these motions, within 30 days. If defendants fail to make the requisite showing, the court will vacate defendants' motion as to plaintiff Johnson and proceed only to adjudicate the motion pertaining to plaintiff Capogreco. Moreover, if no adequate showing is made, the motion for partial summary judgment as to defendant Johnson will be permanently vacated, the matter proceeding to trial as to plaintiff Johnson.

20   7/05/05, Order, p. 3.

21            Defendants were therein given 30 days to show that plaintiff Johnson had had

22   access to his legal property, and if so, plaintiff Johnson then had 30 days to provide his

23   opposition and exhibits, or to determine if he wished to rest on previously submitted opposition

24   and exhibits.  Id., at 3-4.  By Order, filed on 9/02/05 (#148), the court found that it could not

25   proceed, in light of the defendants' subsequent responses, to adjudicate the partial summary

26   judgment as to plaintiff Johnson, determining that an evidentiary hearing would be required to

resolve the question of plaintiff's access to the relevant legal property allowed by non-parties, Salinas Valley State Prison (SVSP) staff.[4]  Id., 4-5, 33.  By Order, filed on 12/02/05 (#160), an evidentiary hearing was set for 2/14/06, with respect to the question of access to legal property allowed plaintiff by SVSP non-parties (pursuant to the All Writs Act, 28 U.S.C. § 1651), alternatively permitting immediate resolution of this collateral matter by the warden and the parties.  On 12/14/05 (#161), a "stipulated agreement re: access to legal materials" was filed setting forth that the purpose of the evidentiary hearing was to address plaintiff Johnson's claim that he was being denied access to his legal property in his possession and in the possession of Inmate Capogreco, material he needed to complete his opposition to the summary judgment motion.  In the stipulation, it was also noted that the only issue regarding his legal property was that of such property that remained in Capogreco's possession and that should he be allowed access to that property he would be able to complete his opposition to defendants' summary judgment motion.  12/14/05 stip, p. 2.  It was therefore stipulated by plaintiff and defendants' counsel that plaintiff would be allowed to ask Capogreco to provide plaintiff Johnson with the legal materials of Johnson's in his possession and that Johnson could request that Capogreco also provide additional material that he might have in his possession that would otherwise be relevant for plaintiff Johnson's opposition.  The requests would be made in the form of service by defendants' counsel of a copy of the stipulation upon Capogreco.  Capogreco, per the stipulated agreement, would be asked to copy and mail all of the legal material at issue in his possession to plaintiff Johnson at SVSP, cost to be borne by SVSP, and such legal materials on delivery to be treated and inspected as legal mail.  Id.  Should Capogreco not choose to cooperate, defendants' counsel was to request a court order directing delivery of such material to plaintiff Johnson forthwith.  Id., at 3.  It was also stipulated that "[t]he delivery to Johnson of his legal property

---

[4] The court proceeded, therein, however, to adjudicate the partial summary judgment motion as to plaintiff Caprogreco (by findings and recommendations), before the then pending motion for partial summary judgment as to both plaintiffs had been adjudicated:

now in inmate Capogreco's possession shall satisfactorily resolve the issue of Johnson's access

to his legal material." Id., at 3 (¶8).

Based on the stipulated agreement, by Order, filed on 12/22/05 (#162), this court

vacated the evidentiary hearing.  In the order, once plaintiff had been provided the legal property

as set forth in the stipulation, defendants were directed to so inform the court, after which

defendants could re-notice their motion for summary judgment as to all defendants against

plaintiff Johnson; plaintiff was, thereafter, to have thirty days to file his opposition, with the

caveat directed to plaintiff that any of plaintiff's prior opposition to the defendants' previously

vacated motions would not be considered.  As to any previously filed exhibit upon which

plaintiff intended to rely, he was directed either to re-file it or to "clearly and specifically identify

it among his prior filings."  Id., at 2.  Defendants were cautioned that any previously filed reply

would not be considered and that they had 15 days to file any reply (following service of

plaintiff's opposition).  Id.

By Order, filed on 2/16/06 (# 166), the court denied plaintiff's motion for

appointment of counsel and, pursuant to plaintiff's request, vacated the request for documents he

has filed on 11/22/05.  On 12/18/06, a scheduling order was filed, permitting, inter alia,

discovery to be conducted until March 16, 2007.  By Order, filed on 3/03/07 (#170), plaintiff was

granted a 15-day extension of time to submit a motion to compel discovery, based on plaintiff's

complaints of having been placed on medical quarantine as of 3/02/07, and "of having his work

product inexplicably lost, stolen or destroyed by non-defendants."  Id., at 1.  No other date in the

scheduling order was thereby affected.  Id., at 2.

On 4/23/07 (# 171), plaintiff filed a motion to compel (which, by application of

the mailbox rule, was actually filed on 4/19/07), wherein he seeks an order compelling non-

defendants "to release any and all legal materials that pertain to" his case.  Motion, p. 1.  He

vaguely identifies these materials as "part of the work product/discovery for my case....," which

he needs to prove the truth of his allegations.  Id.  Plaintiff embarks on a very tangled history for

his ambiguous requests.  He states that inmate Capogreco mailed him a declaration (dated 1/23/06) (Exhibit A), along with legal material sent in compliance with the stipulated agreement referenced earlier.  Motion, p. 1.  He states that defendants' counsel, J. Riches II, helped facilitate the direct correspondence between himself and Caprogreco.  Motion, p. 1, Exhibit B.  Plaintiff identifies correspondence from Deputy Attorney General Riches to plaintiff (dated 3/20/06) (Exhibit C), and from plaintiff to Mr. Riches (Exhibit D).  The gist of plaintiff's complaint is apparently that Capogreco's legal property in New Folsom was put in some disarray when Capogreco was placed in ad seg and that plaintiff was unable to receive much of his work product from that unidentified period.  Plaintiff contends that upon going through the material that Capogreco was able to mail him, plaintiff discovered that the majority of it was Capogreco's, and had no bearing on plaintiff's case.  Motion, p. 2.

Plaintiff thereafter returned three thick envelopes of legal mail to Capogreco's counsel.  Plaintiff then goes on to state that Caprogreco was transferred from SVSP to CSP-New Folsom to CSP-Lancaster to R.J. Donovan, and that while Capogreco was at Lancaster, R&R staff "'lost' a full box of Mr. Capogreco's legal materials."  Motion, p. 2.  When on 1/25/07, plaintiff sent Capogreco a letter asking for copies of inmate appeals or log numbers of 602 appeals he filed at each prison as to "the theft/loss/destruction of our legal materials," Capogreco replied that all such grievances were in the possession of his lawyers.  Motion, p. 2, Exhibit F, Capogreco letter, dated 3/21/07.

Plaintiff states that he also wrote good faith letters to wardens and appeals coordinators at SVSP, CSP-New Folsom, CSP-Lancaster, and R.J. Donovan, to which he received no replies.  Motion, p. 2, Exhibits G-M.  Plaintiff indicates that he is apparently trying to gather property receipts from Capogreco involving the aforementioned prisons to show the "chain of evidence was broken by non-defendants at four (4) separate prisons."  Motion, p. 2. Plaintiff states that he intends to supplement his motion with this information in future filings. Motion, p. 3.  By way of relief, plaintiff asks this court to direct non-defendant wardens, R&R

1    staff, and appeals coordinators at SVSP, CSP-New Folsom, CSP-Lancaster,  R.J. Donovan to

2    locate the legal materials belonging to himself and Capogreco, his former co-plaintiff; to provide

3    two copies of all such material to himself and Capogreco at CDCR expense in certified mail; and

4    to do so within 60 days.  Motion, p. 3.

5              In his declaration, Exhibit A, Capogreco sets forth under penalty of perjury that he

6    has sent plaintiff all exhibits he had at the time but listed the following as missing material:

7              A) 125 declarations concerning overall medical;
               B) 68 declarations concerning dental;
8              C) 40 declarations concerning Dr. Lett;
               D) Letters and information from the American [Diabetes]
9              Association, approximately 100 pages;
               E) Outcome stud[ies] and letters from various suppliers of
10             ins[ulin].  (El[i] Lilly).
               F) Information from/on Accucheck monitoring systems;
11             G) Information on Depakote from Abbot[t] Labs;
               H) Diabetic outcome study from U.C. Davis medical center on
12             Diabet[es].

13             Nothing is set forth to show how Capogreco can know the precise numbers of,

14   e.g., declarations concerning "medical" or "dental" are missing, who authored the declarations,

15   what issues/incidents they implicated, whether and how any of them are linked to plaintiff's

16   allegations, etc.

17             In opposition to the motion, defendants aver that the motion should be denied on

18   the ground that there are simply no discovery requests pending.  Opposition (Opp.), p. 2.

19   Plaintiff's motion is defective, according to defendants, because he does not reproduce requests

20   made to the defendants, does not attach a certificate of service, and does not reproduce the

21   responses to which he objects.  Id.  Defendants submit the declaration of defense counsel, John

22   W. Riches, II, wherein he states that plaintiff has served "neither interrogatories, requests for

23   production, nor requests for admissions upon defendants."  Opp., p. 3, Declaration of John W.

24   Riches, II, ¶ 6.  There is nothing for the court to compel, defendants maintain, because, in

25   addition to there being no pending discovery requests propounded upon defendants, defendants

26   complied with the stipulated agreement to permit "plaintiff access to his legal property, necessary

1   for the completion of his opposition to defendants' summary judgment motion, both in his

2   possession and in the possession of his former co-plaintiff, inmate Capogreco." Id., Riches Dec.,

3   ¶¶ 3-6.  In his declaration at ¶ 4, counsel for defendants confirms that he complied with the

4   agreement by "facilitating the approval of inmate to inmate correspondence between plaintiff...."

5   and Capogreco, a point plaintiff expressly concedes.

6           At this point, this court has been engaged for years in seeking to assist plaintiff

7   Johnson in obtaining the legal material he claims that he needs to oppose defendants' motion for

8   summary judgment.  If, in fact, a large portion of the material has been lost or destroyed

9   Capogreco's transits to various prisons, there is little this court can do.  Moreover, plaintiff does

10  not explain why it is that he cannot set forth in a declaration, under penalty of perjury, that, for

11  example, he filed grievances as to specific medical conditions that went unanswered.  Moreover,

12  over the years, plaintiff has filed numerous exhibits in filings in this court.  It is unclear whether

13  he has reviewed the filings to determine whether any earlier exhibits could be identified and/or

14  submitted in opposition to the summary judgment motion.  Plaintiff simply has provided no basis

15  for this court to order non-defendants to compel discovery that is inadequately described and that

16  may simply no longer exist.  Plaintiff's motion to compel must be denied.

17  Pending Motion for Summary Judgment

18          In reviewing plaintiff's opposition to the pending summary judgment motion, the

19  court observes that plaintiff simply has filed no substantive opposition.  Instead, plaintiff insists

20  that defendants have not complied with the court's order to inform the court that plaintiff has

21  been provided with the legal property to which he has sought access before re-noticing the

22  motion.  He also contends that defendants, in failing to serve him with the pending motion, until

23  5/22/07, were not in compliance with the court's scheduling order, filed on 12/18/06, setting the

24  dispositive motion filing deadline as 5/11/07, and plaintiff notes that no request for an extension

25  of time for filing the motion was filed.  Plaintiff contends that the court should invoke the

26  sanction of permanently vacating defendants' summary judgment motion, which the court once

1  warned defendants it would do if plaintiff was not assured of adequate access to his legal

2  property.  Opposition, pp. 1-5.  Among his numerous exhibits, which consist largely of previous

3  court orders in this case and filings by the parties, plaintiff includes as Exhibit M, a copy of a

4  letter from defendant's counsel Riches, dated 2/6/06, to plaintiff, informing plaintiff that he had

5  been advised by the CSP-Sacramento litigation coordinator that he had been sent a box of legal

6  materials from Capogreco.  The letter references an enclosed "stipulation of compliance with

7  access to legal materials agreement," which counsel asks plaintiff to sign, and to otherwise

8  inform him if he believes the agreement has not been complied with.  In handwritten notes,

9  evidently by plaintiff, on the letter, plaintiff avers he did not agree and did not sign the

10  compliance stipulation and writes that the wrong material was sent.  Plaintiff includes the

11  "stipulation of compliance" document as well, which is unsigned, and which plaintiff produces

12  as evidence that he has never had been supplied the information that he needs to complete his

13  opposition.

14          Plaintiff does not explain how, even if the court were to vacate the motion for

15  summary judgment permanently and set the matter for trial, how plaintiff would proceed to trial

16  without the same exhibits he claims to need for his opposition.  In order to resolve this matter

17  once and for all, the court will now direct defendants to provide plaintiff, within 10 calendar

18  days, with copies of all the documents in his prison medical files to the extent that they have not

19  been provided in support of the motion for summary judgment, and copies of any and all

20  medically related grievances he has filed, whether located in his central file or elsewhere, for the

21  period of time at issue herein, beginning with his transfer to HDSP on October 19, 1998, until

22  September 8, 2000, when this the original complaint in this action was filed.

23          Accordingly, IT IS ORDERED that:

24          1.  Plaintiff's motion to compel, filed on April 23, 2007, is denied;

25          2.  Defendants are directed to provide plaintiff the documentation, as set forth

26  above, from plaintiff's prison medical and central files, within 10 calendar days; and

1          3.  Plaintiff is to file his substantive opposition to the pending motion for

2   summary judgment within 30 days thereafter; failure to do so will be deemed a waiver of

3   opposition by plaintiff.

4   DATED: 01/30/08                              /s/ Gregory G. Hollows

5                                                _____
                                                 GREGORY G. HOLLOWS
6                                                UNITED STATES MAGISTRATE JUDGE

    GGH:009
7   john2141.mtc+

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26